Mr. Chief Justice Sharkey
delivered the opinion of the Court.
Baldwin, Vail, and Hufty instituted this suit against the plaintiffs in error on two promissory notes, each for the sum of ¡$¡6283.95, *674 payable at the Merchants Bank in New Orleans, one at sixty, and the other at ninety days from the 4th cf December, 1839.
The jury returned a special verdict, by which it appears that the two notes were made on the 4th of December, 1839, by James Payne, Abner E. Greenland Robert Y. Wood, and on the same day delivered to the Mississippi Railroad Company for and on account of Payne ; and that the notes were discounted by the company, under their banking powers, on the same day at the instance of Payne, who received the proceeds ; and the company became thereby the holders of the notes, which were presented for payment at maturity ; and on payment being refused, were protested, and remain unpaid. The Mississippi Railroad Company being indebted to Baldwin, Vail and Hufty, on the first day of April, 1841, transferred to them the notes in payment of the debt. If upon these facts the law was for the plaintiffs, then they found for them ; but if the law was for the defendants, they found for them. ■ The Court gave judgment for the plaintiffs, and the. defendants brought up the case by writ of error ; and the sole question is, had the bank, at the time, mentioned, a right to transfer its negotiable securities, in the face of an act of the legislature, previously passed, prohibiting such transfer ?
The language of the prohibition is as follows : “ That it shall not be lawful for any bank in this State to transfer by indorsement or otherwise, any note, bill receivable, or other evidence of debt; and if it shall appear in evidence upon the trial of any action upon any such note, bill receivable, or other evidence of debt, that the same was so transferred, the same shall abate upon the plea of the defendant.” This, it is insisted, is in violation of that provision in •the Constitution of the United States, which declares that no State shall pass any law impairing the' obligation of contracts, and therefore void, inasmuch as it impairs a right conferred upon the bank by its charter to transfer promissory notes.
We are referred to the adjudged cases on this subject, beginning with the great case of Dartmouth College v. Woodward, 4 Wheat. 518, which has been followed by others of high authority, all holding that a charter to a private corporation is a contract within the meaning of the) Constitution, and that any act of a State legislature, which *675 abridges, alters or materially changes, any corporate right secured by the charter, without the consent of the corporation, is void, as being repugnant to the Constitution. By some of these authorities, a hank is held to be a corporation of this description. If the correctness of this doctrine rested alone on positive authority, it would be rashness at this day to question it, but it commands the entire approba-bation of judicial reason, and deserves to be-venerated for its purity. Legislation which impairs chartered rights is not only at war with the Constitution of the United States, but it is repugnant to a similar provision in our State constitution, and on that account would be inoperative. But if both these instruments were silent as to the power to impair the obligation of contracts, such legislation is essentially repugnant to the protective spirit of a well organized government. In a government like ours, such power is totally out of the range of legislative authority. We are'governed by a written Constitution, which is a limit to the exercise of power, and by which certain-great principles are expressly excepted out of the general powers of legislation. No one can be deprived of his life, liberty, or property, but by due course of law, and the spirit of this provision extends undoubtedly to franchises granted' to a body corporate. Government is designed for the happiness and safety of the people, for their security in the enjoyment of whatever right- they may have acquired, and it is immaterial whether the right has been acquired by grant from the State or from an individual. The State must observe good faith as well as individuals, and she can no more withdraw what she has granted than can an individual, unless she has reserved the power to do so. She may grant upon condition, express or implied, and the right may be forfeited, but it cannot be withdrawn at pleasure. The Parliament of Great Britain claims to be omnipotent, and may possess the right to annul coporate rights, but it does not exercise it. Our constitutional provisions were designed as checks against the exercise of any power which is destructive of private vested rights.
A bank charter is as good an example of a contract within the meaning of the Constitution, as any that could be given. The State either voluntarily tenders, or grants, on the application of individuals, it is immaterial which, individuality and immortality to an arti *676 ficial or legal person, and confers upon it certain powers, on the condition of acceptance and investment for the purposes of carrying out the objects of the charter. When it is accepted and acted under, the privileges secured or granted are irrevocable, as much so as if the grant had been made to a private individual; and it is immaterial whether the benefit to the State or the public is actual or ideal ; it may even prove injurious, but this will not alter the invio-liability of the contract. The State must keep its proffered faith.
This being the law, then, there is but one point left to determine ; and that is, has there been an infraction of chartered rights ? bias the obligation of the contract with the" Mississippi Railroad Company been impaired ? If so, the act is void. But if, on the contrary, the rights granted have not been impaired, the act is valid. We cannot declare an act void, unless there has been a palpable infraction of a constitutional provision. It will not do that by possible construction it may conflict with the Constitution, because a construction which produces confliction is to be avoided, if any other can be fairly given.
It is said the powers of the bank are coextensive with those of any bank in the State, under a general provision in the supplement which authorized the company to “ exercise all the usual rights, powers, and privileges of banking, which are permitted to banking institutions in this State.” As it possesses all the powers of any other bank, the charter of the Planters Bank is resorted to as best showing what those powers are, by the 6th section of which it is declared, that the bank shall be “ able and capable inlaw to have, possess, receive, retain, and enjoy to themselves and their successors, lands, rents, tenements, hereditaments, goods, chattels and effects, of what kind soever, nature and quality, not exceeding in the whole six million of dollars, including the capital stock; and the same to grant, demise, alien, or dispose of for the good of said bank.” It is under this section that express power is claimed to transfer notes. The 17th section confers power to receive money on deposite, to discount bills, of exchange and notes, to make loans, &c., but is silent as to the power to transfer notes, and we are to determine whether counsel are right in supposing that the power was conferred by the 6th section.
*677 The first thing which strikes us as rather remarkable, is, that the power to transfer notes is claimed under a section which does not even authorize the bank to take notes, unless it be by a very remote implication. The 6th section never was designed to perform such an office. This becomes manifest when we follow up the charter, and find in a subsequent section- an express provision authorizing them to- discount notes and bills. But, say the counsel, notes are “effects,” and the power to dispose of effects is equivalent to a power to assign notes. The word “ effects” is very comprehensive in its signification, it is true, but when we come to construe the words of a law, we must look at the context to arrive at their true meaning. When we come to do.this, it seems more than probable that the legislature, in using the word effects,” had no idea that they were regulating the transfer and ownership of promissory notes. To discount notes and bills, is the principal business of a bank, and being so, the legislature was specific in granting authority to do so-Would it not seem like very awkward legislation in creating a bank, to leave it with only a general power to take “ effects,” and to dispose of them for the good of the bank ? It would, and hence we fairly conclude, that in this instance the 6th section had. reference only to the property of the bank, and not to its cboses in action, or more properly, its notes.
But there are other considerations which are entitled to more weight. We are informed that a corporation possesses only those powers or properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence. Dartmouth College v. Woodward, 4 Wheat. 518. The incidental or implied powers must not be construed to embrace everything. They are at rnqst only such powers as are essentially necessary to enable the corporation to fulfil its destiny, — to do those things which it may do by express permission. Such powers, it may be presumed, were intended to be conferred.; they are implied from those which are granted. In order to ascertain, then, what has been granted, we must look only to the grant solely, and it will be well to keep out of view the general provisions of the law, and consider of the grant as though no such provisions existed. The right to transfer notes is claimed under the charter. In England, notes received *678 their negotiable character from the 4lh and 5th of Anne ; before that time, they were not assignable, it being a general principle in the Common Law, that choses in action were not assignable. With us they derive the character of negotiability from a statute, which declares, that all bonds, notes, &c., may be assigned by in-dorsement, and the indorsee may maintain an action in his own name, and recover, subject however to offsets acquired before notice of transfer. H. & H. Dig. 373. Now let us sweep this statute from the statute book, and suppose that no such law had ever existed, could any one imagine in such a case, that this bank charter made notes negotiable by indorsement, and enabled the holder to sue in his own name and recover ? Does it perform the office of the statute of Anne and of our own statute, and enable the bank, in the legal and mercantile sense of the term, to .assign its notes by indorsement ? To these questions there can be but one answer, and that in the negative. If notes are negotiable under this charter, they may be negotiated so as to deprive the maker of his offsets, for it contains no provision for him. This right is secured to him alone by the general law providing for the negotiation of paper. Yet I suppose no one would contend that offset's acquired against the bank, before notice of assignment, would not be available against the note in the hands of any holder. Then, I apprehend, that counsel are mistaken in supposing that the charter gives express authority to assign notes. If the, bank has such power, it must, in some shape or other, derive it from the general law regulating -this subject, for we cannot say that the right to dispose of effects confers any right to indorse a note so as to enable the indorsee to maintain an action in his own name. The ought to dispose of effects is a right which was always enjoyed by every individual, and yet statutes, specially framed for the purpose, have been thought necessary, both in England and America, to enable the payee of a note to transfer it.
But it is also insisted, that independently of the grant to this corporation, it is incident to it at Common Law to have a capacity to purchase and alien lands and chattels. That is true, if by the law the property may he sold or disposed of. The jus disponendi is an incident to property, it is not an incident to the corporate rights in *679 that broad and unqualified sense contended for. The authority given to this bank to dispose of the property which it was authorized to acquire, was mere supererogation ; it had that power without the grant, to the same extent that it has with it, for the charter gives nothing but a general authority. But the power to hold and dispose of property, only enables the corporation to take it with all its incidents, and so to dispose of it. ThejMs disponencli is regulated by the general laws of the State, as well in reference to corporations as to individuals, unless by an express grant their property is exempted from the operation of those laws, or unless, by providing another ample mode, the legislature should so plainly indicate an intention to make an exemption, as to leave the matter beyond doubt. This charter grants no independent or distinct power to dispose' of property. It gives the power to hold property and dispose of it, but it is silent as to the mode of disposition ; the consequence is, that it must be disposed of according to the general law. All that was meant, by the grant of power to dispose of property, was, to give that power, if by law the property was in its character alienable or vendible, and this, too, is the extent of the Common Law power. In this respect the corporation stands precisely on a footing with natural persons. They cannot sell that which it is illegal to sell, or which is not transferable from one to another. And in selling that which may by law be disposed of, the general law must be followed. The right to dispose of it must depend upon the law of the property. As these laws are alterable at the pleasure of the legislature, the corporation cannot claim exemption from the effect of these alterations, unless by express stipulation the legislature has consented to grant such exemption. These changes cannot affect vested rights of course, but they are binding on the corporation in all subsequent transactions. Suppose this corporation were selling its real estate, would it not follow the law of conveyances as it existed at the time of making the conveyance ? Surely it would', because the charter gives' it no power to convey in any other w.ay. Could it convey in fee tail ? It could not, because it has no grant of exemption from the general law.’ Private property may be appropriated to public uses, on just compensation made. Could it be said that the corporation, because its charter authorized *680 it to hold property, was exempt from this provision ? The bank then holds its property subject 'to such exactions, restrictions, or incidents, as are imposed by law on the property of individuals, unless they are removed by the charter. This corporation has power to take promissory notes. Negotiability is an incident or quality attached to notes by law, not by the charter. It does not constitute an essential ingredient in a note. It does not strengthen the contract between the maker and payee, npr does it constitute any part of that contract ; and as it was a privilege enjoyed by the corporation solely under the general law; it is one which was taken from them by the repeal of the law. The charter gives them no guaranty that the law should not be repealed. It was a subject over which the legislature had entire control when the charter was granted, and this, like all other subjects, is still subject to that ■control, unless a clear and positive restriction has been imposed. The power of the legislature is not to be taken away by construction. If the charter had granted power to assign these notes so as to enable the assignee to maintain an action in bis own name, then the right would have been beyond the control of the legislature. Or if this were a power essentially important; to enable the bank to carry on its business, apd' necessarily implied by the charter, then the question would be different; but it is not. It may be very convenient for a bank to transfer its securities, but certainly such power is not essential to its existence, or to its capacity to do banking business. A contract is not impaired in its obligation, unless some right or privilege which has been granted, has been defeated or abridged. The legislature did nothing but take from promissory notes an incident which they had previously given them. The substance of the note itself was not changed, and the charter does not guarantee to the corporation that such notes should remain negotiable. As well might it be insisted that the whole code of laws, with regard to property, was unchangeable as to the property of this corporation ; that taxes should not be increased, or imposed on any article that was not then taxable.
These views accord with the decision of the Supreme Court of the United States, in the case of the Providence Bank v. Billings & Pittman, 4 Peters, 514. The bank insisted, that it was exempt from the operation of a law subsequently passed, imposing a tax on *681 bank stock. It was held, that the taxing power was important to the government, and that nothing but an express exemption would exonerate property of the bank from the general power of the legislature to impose taxes on it. This may be said with truth of all the legitimate subjects ofdegislation ; they are important to the government ; some, it is true, more so than others ; and we cannot assume that .any branch of it has been abandoned, without an express' declaration to that effect. “ The power of legislation (said the Supreme Court), and consequently of taxation, operates on all persons and property belonging to the body politic. This is an original principle, which has its foundation in society itself. It is granted by all, for the benefit of all. It resides in government as a part of itself, and need not be reserved when property of any description, or the right to use it in any manner, is granted to individuals or .corporate bodies.” Another portion of the opinion in the case referred to, which was delivered by Chief Justice Marshall, will apply in the present case, with still greater force. “ The great object of an incorporation is to bestow the character and properties of individuality on a collective and changing body of men. This capacity is always given to such a body. Any privileges which may exempt it from the burthens common to individuals, do not flow necessarily from the charter, but must be expressed in it, or they do not exist.” For this corporation is claimed a privilege, — the privilege of exemption, from legislative action on one of the legitimate subjects of legislation. Such a privilege is not expressed in the charter, and therefore does not exist. They claim that the law regulating the negotiability of promissory notes, shall remain as it stood when the charter was given. The alteration in the law does not deprive the corporation of any granted franchise, — it does not take away from it any of its property or effects, —it does not impair the obligation of any contract that had been made. The assignment of a note is a new contract, the power to make which was derived from the law, and the new law simply takes this power from the corporation. It amounts at most to a mere modification of the use that may be made of a promissory note, leaving the corporation the full power to use their notes according to their legal effect. The obligation of the contract in this instance, is the *682 duty the State is under to secure to the corporation the full enjoyment of all that was granted ; but it is no part of the obligation that the State should withdraw its power of legislating on proper subjects for legislative action, because by such legislation a particular kind of property, which the corporation may hold, may be rendered less useful to it. For these reasons we think the law on the special verdict was for the defendants, and there is nothing in the pleadings which can change the judgment.
Judgment reversed, and judgment for defendants.